UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BASSEM BANAFA,<br>      Plaintiff,<br>    v.<br>CONTRA COSTA COUNTY, et al.,<br>      Defendants. | Case No. 18-cv-01642-MEJ<br><br>**ORDER RE: MOTION TO DISMISS**<br>Re: Dkt. No. 11 |

## INTRODUCTION

Pending before the Court is the Motion to Dismiss filed by Defendants Contra Costa County ("the County"), Mark Peterson, Steve Moawad, and Cherie Mathisen ("Defendants") pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6). Dkt. No. 11. Plaintiff Bassem Banafa ("Plaintiff") filed an Opposition (Dkt. No. 18) and Defendants filed a Reply (Dkt. No. 20). The Court finds this matter suitable for disposition without oral argument and **VACATES** the July 12, 2018 hearing. *See* Fed. R. Civ. P. 78(b); Civ. L.R. 7-1(b). Having considered the parties' positions, relevant legal authority, and the record in this case, the Court **GRANTS IN PART** and **DENIES IN PART** Defendants' Motion for the following reasons.

## BACKGROUND

In January 2015, Plaintiff was hired as a temporary Forensic Accountant in the Contra Costa County District Attorney's Office ("DAO") at salary step 1. Compl. ¶ 13. He is a practicing Muslim, the only one in that office. *Id.* ¶ 14. Plaintiff has a beard, darker skin, and the appearance of a Middle Eastern Muslim. *Id.* He asked his supervisor, Defendant Steve Moawad, to use the polygraph room for daily prayer. *Id.* Moawad granted him permission. *Id.*

Plaintiff alleges he has been subjected to "a constant barrage of discrimination, harassment

and retaliation – he worked in an office culture that was predominantly white male and Christian, lacking in diversity, and intolerant of minorities." *Id.* ¶ 16. At some unspecified point in time, Plaintiff heard a deputy district attorney responsible for recruiting state that it was difficult to recruit minorities because "the minority candidates are just not good enough." *Id.* ¶ 17. This same individual expressed a negative attitude towards "beards at the D.A.'s office, saying they represent disrespect to the justice system, and that a beard is cause for disqualifying a juror." *Id.* Plaintiff alleges these attitudes are widely held in the DAO and "explain why white new hires are often started at the high salary steps, while Plaintiff was started at the lowest step." *Id.*

The first alleged discriminatory act in Plaintiff's Complaint occurred in January 2015, when "Defendant failed and refused to process his new hire paper work." *Id.* ¶ 18. Plaintiff contends that Defendant Cherie Mathisen "deliberately held onto Plaintiff's paper work on her desk for several weeks, failing and refusing to process it because of Plaintiff's religion, race and/or national origin." *Id.* ¶ 19. As a result, the DAO "had to request an 'off-cycle' check and Plaintiff did not receive his first paycheck on time. *Id.* ¶ 18.

From January 2015 through October 2015, Plaintiff was paid for a 40 hour week even though he actually worked between 50 and 70 hours per week. *Id.* ¶ 20. At some point, he told his supervisor that it was "impossible for him to do his job with forty (40) hours per week." *Id.*

In October 2015, Plaintiff "received an offer for a permanent position" commencing October 26. *Id.* ¶ 21. He "was told that he would be paid at salary Step 5, [but] was only paid at Step 2." *Id.* Plaintiff states he "significantly exceeded the minimum qualifications for a Forensic Accountant Position, and but for discrimination, should have been brought in at Step 5." *Id.* ¶ 28. Although Plaintiff complained, he was told that "if he didn't accept the decision, County Human Resources, i.e., Defendant Cherie Mathisen[] would find ways to retaliate against him" *Id.* ¶ 22. Plaintiff alleges it was Mathisen's decision to start him at Step 2, a decision "based on Plaintiff's religion, race and/or national origin." *Id.* ¶ 27. He also alleges that Moawad "falsely told him it was not up to the D.A.[']s office" whether to start him at salary step 2 or 5. *Id.* ¶ 24. Plaintiff alleges he was the only forensic accountant at the time, but that at least eight Inspectors, the DAO employees most comparable to him, were hired between 2012 and 2014 at or near Step 5. *Id.* ¶ 23.

He further alleges the majority of Inspectors were both White and Christian. *Id.*

At another unspecified time, Plaintiff "provided the relevant sections of the Local MOU to Defendant, but the County refused to permit him to start at Step 5." *Id.* ¶ 25. "When confronted with [the MOU], Defendants changed their explanation, now saying they had little experience with employees represented by Local 21, and that it was too late to make any changes." *Id.*

After Plaintiff was permanently hired, "Defendant again failed to process his permanent hire paper work in a timely manner, delaying him from being paid for several weeks." *Id.* ¶ 31. This caused Plaintiff "considerable financial and emotional distress." *Id.* He alleges that Mathisen, once again, "deliberately held the paper work." *Id.* ¶ 31. Plaintiff asked Mathisen for an explanation, but she "refused to respond." *Id.* ¶ 33. Instead, she "badmouthed Plaintiff to the District Attorney, Defendant [Mark] Peterson, and to others." *Id.*

Moawad later reprimanded Plaintiff for the "demanding tone of his email to Defendant Mathisen." *Id.* ¶ 34. In response to questioning by Plaintiff, Moawad implied that Mathisen perceived Plaintiff as posing a threat of workplace violence. *Id.* Plaintiff then asked, and Moawad confirmed, that this had something "to do with the recent shooting / terror attack in San Bernardino." *Id.* "Plainly, Defendant Mathisen had profiled Plaintiff as a potential terrorist capable of workplace violence." *Id.*

Moawad subsequently sent Plaintiff two emails. *Id.* ¶ 35. One email "referred him to therapy to deal with his frustrations." *Id.* The other "repeated the insinuation that he might be capable of workplace violence" and, thus, showed that Moawad purportedly "shared [Mathisen's] assessment that Plaintiff was a potential terrorist." *Id.*

Plaintiff was issued a DAO photo id, which he alleges "qualif[ied] him to bypass court security" at the Contra Costa County Courthouse in Martinez. *Id.* ¶ 36. Court security checked his credentials "many times, and knew very well that he was not an attorney, but a staff member at [DAO]." *Id.* ¶ 37. Starting in July 2015, court security "began to regularly harass Plaintiff, subjecting him to frequent full body pat downs, and requiring him to raise his pants to check for weapons," despite knowing that he was a DAO employee. *Id.* ¶ 38. The individuals at court security are County employees and "fully responsible for their own security policies and

3

procedures." *Id.* ¶ 39. Plaintiff asked Moawad what could be done about this, but "Defendants were more concerned about preventing Plaintiff from filing a discrimination lawsuit than with protecting him from harassment." *Id.* ¶ 41. They "began micromanaging Plaintiff's court appearance to minimize the need for him to go through security, thus depriving Plaintiff of a valuable career building opportunity, and damaging his career." *Id.* ¶42. Plaintiff alleges that "other members of the [DAO] who were white, and not Muslim were allowed to bypass security at the courthouse, and were not subjected to any secondary screening." *Id.* ¶ 43.

Plaintiff was due for a salary step increase from Step 2 to Step 3 on April 2016, the six month anniversary of his permanent hire, but he did not receive it. *Id.* ¶¶ 47-48. Plaintiff alleges that this failure to increase his salary was "discriminatory." *Id.* Plaintiff was also entitled to receive a 5% pay differential based on his having a CPA license. *Id.* ¶ 49. He did not get this differential until May 2016, five months after it was due. *Id.* ¶ 56. Each time he complained about it, "Defendants expressed serious concerns about his potential for workplace violence, profiling him as though all Muslims were terrorists." *Id.* ¶ 50. "Beginning in about December 2015, then, Plaintiff perceived that Defendants associated him with Islamic Extremism with a penchant for workplace violence." *Id.* ¶ 51.

Defendants directed him "not to contact Human Resources or any other county employee outside [DAO]." *Id.* ¶ 52. Plaintiff alleges that this directive came from Mathisen, "who wanted to avoid dealing with Plaintiff [] and was in retaliation for Plaintiff complaining of discrimination with respect to his pay." *Id.* ¶ 53. He alleges he was directly threatened with retaliation, "that if he did not 'get in line,' the county would 'chew [him] up and spit [him] out,' and sabotage his efforts to get a job elsewhere." *Id.* ¶ 54.

Mathisen never responded directly to Plaintiff about the 5% pay differential. *Id.* ¶ 55. Instead, she humiliated him by discussing "his personal financial business with others in the office" and "accused Plaintiff of displaying an inappropriate level of 'extreme frustration' because he sent two emails about not getting paid properly." *Id.* She also accused him of "having a 'meltdown' and that he was 'screaming up and down the hallway.'" *Id.*

When Plaintiff finally received his 5% pay differential in July 2016, he was told he would

4

only receive the raise as of May 2016. *Id.* ¶ 58. He became upset and told Moawad that "this was unacceptable, and that he would resign." *Id.* Plaintiff alleges "Defendants pressured Plaintiff to resign, and at the same time, initiated an investigation into Plaintiff's whereabouts." *Id.* ¶ 62. "Peterson now took issue with Plaintiff working from home." *Id.* ¶ 63. Plaintiff states he informed Defendants he had been fasting during the month of Ramadan, and that during this time he suffered from dehydration and hunger and had concerns about safety driving to and from the office. *Id.* Defendants assigned a supervising district attorney, Dan Cabral, to interview Plaintiff about his whereabouts. *Id.* ¶ 64. The tone of the interview was "accusatory, as though Plaintiff was guilty of some grave infraction," and Cabral pressured him to submit his resignation as soon as possible. *Id.*

On July 28, 2016, Plaintiff filed a charge of harassment, discrimination and retaliation with the Equal Employment Opportunity Commission ("EEOC"). *Id.* ¶ 72.

At some point in August 2016, Plaintiff submitted a letter from his psychiatrist, Dr. David Kan, requesting four accommodations: (1) a later start time, generally 10:00 a.m.; (2) flexibility to work from home as needed; (3) 24 hours' notice prior to meeting with supervisors and colleagues; and (4) a private office with a lock on the door. *Id.* ¶ 74. He sought these accommodations "due to a disability limiting one or more major life functions, including his ability to sleep, and his ability to think, concentrate and focus. He was diagnosed with ADHD, attention deficit hyperactive disorder." *Id.* ¶ 76. Plaintiff alleges Defendants denied his request for accommodations and "began to use his need for these accommodations to harass and retaliate against him." *Id.* ¶¶ 77, 116.

Peterson began to question Plaintiff's attendance. *Id.* ¶ 78. At this time, "Plaintiff had been in continual meetings with the California Department of Justice, the U.S. State Department, Marin County D.A., Napa County D.A. and Manhattan D.A. and other agencies." *Id.* These meetings were typically held at the D.A.'s office, but "took Plaintiff away from his cubby." *Id.* Moawad, at Peterson's direction, began to require Plaintiff to notify him as to Plaintiff's "whereabouts at all times during the workday by email." *Id.* ¶ 79.

On September 12, 2016, Moawad issued Plaintiff a non-disciplinary counselling memo.

5

*Id.* ¶ 80. These memos are the "first step in the disciplinary process although they are not considered discipline as such." *Id.* ¶ 81. The next step is a letter of reprimand. *Id.* Moawad informed Plaintiff that he "had to check in on a daily basis, inform him what cases he is working on, how much time he has spent on each case, who he has spoken to, for how long, and what the general topic of discussion was." *Id.* ¶ 82. Plaintiff alleges this reflected "increasing hostility" and he "began to lose sleep . . . [and] to visit his doctor more frequently, who advised him to leave his job because of the harassment." *Id.* ¶ 83.

On January 27, 2017, Plaintiff and his attorney met with Moawad and Doug McMaster. *Id.* ¶ 84. Plaintiff expected "a disciplinary write up," but the "discussion focused on management's demands to micromanage Plaintiff's every move." *Id.*

Plaintiff received a "Letter of Reprimand" on March 20, 2017. *Id.* ¶ 85. The letter "basically charg[ed] him with not cooperating with [] efforts to micromanage his every move, his comings and goings, his working from home and his timekeeping." *Id.* One topic of the letter was "Daily Work Status Updates," which concerned the requirement that Plaintiff email Moawad at the end of the day summarizing his work activities for that day, including the amount of work performed for other agencies. *Id.* ¶ 86(a). Another topic was "Failure to Notify Management of Your Whereabouts," which concerned the requirement that Plaintiff notify Moawad when he arrived at work and when he expected to be away from his workstation for a significant period of time. *Id.* ¶ 86(b). Plaintiff alleges these requirements were "demeaning, humiliating and harassing." *Id.* ¶ 87. At the time, Plaintiff was performing "very sophisticated forensic accounting services" for the DAO "and other state and federal agencies, and his services were in high demand." *Id.* ¶ 88.

On March 23, 3017, three days after receiving the Letter of Reprimand, Plaintiff submitted a Notice of Separation, with a desired resignation date of April 21, 2017. *Id.* ¶ 90. "He chose this date in consultation with management." *Id.* The day he submitted this Notice of Separation, "while in a meeting with officials for another agency, Plaintiff was required to vacate the premises accompanied by security, in what amounted to a 'perp walk' as though he had been guilty of some heinous transgression." *Id.* ¶ 91.

Plaintiff filed this action on March 15, 2018. The Complaint asserts twelve causes of action: (1) harassment under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. 2000e, et seq., based on religion, race and national origin; (2) discrimination under Title VII based on religion, race and national origin; (3) retaliation under Title VII; (4) failure to accommodate under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, et seq.; (5) harassment under the ADA; (6) retaliation under the ADA; (7) harassment under the California Fair Employment and Housing Act ("FEHA"), Cal. Gov. Code §12940, et seq., based on his religion, race, national origin and disability; (8) discrimination under FEHA based on religion, race and national origin; (9) retaliation under FEHA; (10) failure to accommodate Plaintiff's disability under FEHA; (11) failure to prevent harassment and discrimination under FEHA; and (12) failure to pay overtime under the Fair Labors Standards Act ("FLSA"), 29 U.S.C. § 201 et seq. *Id.* ¶¶ 92-184. Only the FEHA harassment claim is asserted against the individual defendants, Moawad, Mathisen, and Peterson. *Id.* ¶¶ 145-152.

Defendants filed the present Motion to Dismiss on May 18, 2018 (Dkt. No. 11), as well as a Request for Judicial Notice ("RJN," Dkt. No. 12).[1] Plaintiff filed his Opposition to both on June 8, 2018. Dkt. Nos. 18, 19. Defendants filed their Reply on June 15, 2018. Dkt. No. 20.

**LEGAL STANDARD**

Rule 8(a) requires that a complaint contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A complaint must therefore provide a defendant with "fair notice" of the claims against it and the grounds for relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotations and citation omitted).

A court may dismiss a complaint under Rule 12(b)(6) when it does not contain enough facts to state a claim to relief that is plausible on its face. *Id.* at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662,

---

[1] Because the Court does not consider any of the facts and documents for which Defendants request the Court take judicial notice, Defendants' Request for Judicial Notice is DENIED AS MOOT.

7

678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 557). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (internal citations and parentheticals omitted).

In considering a motion to dismiss, a court must accept all of the plaintiff's allegations as true and construe them in the light most favorable to the plaintiff. *Id.* at 550; *Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007); *Vasquez v. Los Angeles Cty.*, 487 F.3d 1246, 1249 (9th Cir. 2007). In addition, courts may consider documents attached to the complaint. *Parks Sch. of Bus., Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995) (citation omitted).

If a Rule 12(b)(6) motion is granted, the "court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (internal quotations and citations omitted). However, the Court may deny leave to amend for a number of reasons, including "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment." *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

**DISCUSSION**

**A.  Plaintiff's Discrimination Claims**

Plaintiff brings claims against the County for discrimination under Title VII (second cause of action) and FEHA (eighth cause of action). Compl. ¶¶ 99-103, 153-57. Defendants move to dismiss these claims for two reasons. First, Defendants argue Plaintiff's discrimination claims under Title VII and FEHA based on his religion, race and national origin, *id.* ¶¶ 100, 154, are not plausible because they hired Plaintiff knowing these characteristics. Mot. at 10. Second, although

8

Plaintiff claims Defendants terminated his employment "in an extremely hostile and humiliating manner," Compl. ¶¶ 101, 155, Defendants argue Plaintiff concedes that he voluntarily resigned, and the relevant language from his Complaint "makes clear that Plaintiff's claim of 'termination' arises from the fact that he was escorted out of the building by security on the day he submitted his resignation." Mot. at 10; Compl. ¶¶ 90, 95. In response, Plaintiff argues he has "alleged multiple adverse actions: constructive discharge, termination, lower pay, delay of pay, comments suggesting he was a terrorist, isolation, unnecessary searches of his person by security causing humiliation, etc." Opp'n at 4.

To establish a prima facie case of discrimination under Title VII and FEHA, a plaintiff must plead that: "'(1) he is a member of a protected class; (2) he was qualified for his position; (3) he experienced an adverse employment action; and (4) similarly situated individuals outside his protected class were treated more favorably, or other circumstances surrounding the adverse employment action give rise to an inference of discrimination.'" *Fonseca v. Sysco Food Servs. of Arizona, Inc.*, 374 F.3d 840, 847 (9th Cir. 2004) (quoting *Peterson v. Hewlett-Packard Co.,* 358 F.3d 599, 604 (9th Cir. 2004)); *see also Metoyer v. Chassman*, 504 F.3d 919, 941 (9th Cir. 2007) ("California courts apply the Title VII framework to claims brought under FEHA.").

Defendants do not appear to dispute that Plaintiff sufficiently alleged the first two elements of the prima facie cases based on religion, race, and national origin discrimination. As to adverse employment action, an employment action is adverse if it materially affects the compensation, terms, conditions, or privileges of employment. *Chuang v. Univ. of Cal. Davis, Bd. of Trs.*, 225 F.3d 1115, 1126 (9th Cir. 2000). The Ninth Circuit interprets this "broadly." *Fonseca*, 374 F.3d at 847. For instance, it has found that warning letters, transfers of job duties, and "undeserved performance ratings" are adverse employment actions. *Id.* (citing *Yartzoff v. Thomas*, 809 F.2d 1371, 1376 (9th Cir. 1987)). California state courts have interpreted adverse employment action to include "treatment that is reasonably likely to impair a reasonable employee's job performance or prospects for advancement or promotion." *Horsford v. Bd. of Trs. of Cal. State Univ.*, 132 Cal. App. 4th 359, 373 (Cal. Ct. App. 2005). Alleged discriminatory actions may be considered collectively, as well as individually. *Id.* at 374.

Plaintiff alleges Defendants engaged in a pattern and practice of harassment and discrimination based on his race, religion, and national origin, which ultimately led to his termination. Compl. ¶ 101. These allegations include failure and refusal to process his new hire paper work (*id.* ¶ 18), working 50-70 hours per week while getting paid for 40 (*id.* ¶ 20), getting paid at salary Step 2 when he should have been paid at Step 5 (*id.* ¶ 20), accusing Plaintiff of posing a threat of workplace violence based on the terrorist shooting in San Bernardino (*id.* ¶ 34), questioning his attendance and initiating an investigation into his work (*id.* ¶¶ 62, 78-79), issuing a counseling memo and letter of reprimand (*id.* ¶¶ 80, 85), and pressuring Plaintiff to resign (*id.* ¶ 62). Plaintiff alleges these actions ultimately led to him submitting a Notice of Separation. *Id.* ¶ 90. However, although the notice was for a date in the future, Defendants required him to vacate the premises accompanied by security on the day he submitted it. *Id.* ¶ 91. Considered collectively, it is plausible that these actions materially affected Plaintiff's terms, conditions, and privileges of employment, and the Court finds these allegations are sufficient at the pleadings stage. Finally, Plaintiff also alleges similarly situated individuals outside his protected class were treated more favorably. *Id.* ¶¶ 16, 23. Accordingly, at this initial stage, the Court finds Plaintiff has alleged a plausible prima facie case of discrimination.[2]

### B. Plaintiff's Harassment Claims

Plaintiff brings claims against the County for harassment under Title VII (first cause of action), the ADA (fifth cause of action) and FEHA (seventh cause of action), and against the individual defendants for harassment under FEHA (seventh cause of action). Compl. ¶¶ 92-97,

---

[2] Defendants also argue Plaintiff's discrimination claim fails under the "same actor" inference. Mot. at 11-12, Reply at 8. Defendants cite to *Schechner v. KPIX-TV*, which provides that "'[w]here the same actor is responsible for both the hiring and the firing of a discrimination plaintiff, and both actions occur within a short period of time, a strong inference arises that there was no discriminatory motive.'" 686 F.3d 1018, 1026 9th Cir. 2012) (quoting *Bradley v. Harcourt, Brace & Co.,* 104 F.3d 267, 270-71 (9th Cir. 1996). However, *Schechner* provides that the same-actor inference "is a 'strong inference' that a court must take into account on a summary judgment motion," *id.* (internal citation and quotations omitted), and Defendants concede that this "Court and Circuit have not hitherto applied this inference on a motion to Dismiss." Mot. at 12. The Court is not prepared to do so at this time.

122-31, 145-51. Defendants argue these claims "fail to establish any severe or pervasive harassment." Mot. at 12. In addition, Defendants seek dismissal of the FEHA harassment claims against the individual defendants "because the Complaint fails to allege facts showing any harassing conduct by the individual defendants or that any such conduct was due to any bias against Plaintiff due to his membership in a protected class." *Id.* at 13.

Claims of harassment require the same elements under both Title VII and FEHA. *Henry v. Regents of the Univ. of California*, 37 F. Supp. 3d 1067, 1078 (N.D. Cal. 2014), *aff'd*, 644 F. App'x 787 (9th Cir. 2016). To establish a claim for harassment, Plaintiff must demonstrate that: (1) he is a member of a protected group; (2) he was subjected to harassment because he belonged to this group; and (3) the alleged harassment was so severe that it created a hostile work environment. *Manatt v. Bank of America*, 339 F.3d 792, 798 (9th Cir. 2003); *Lyle v. Warner Bros. Television Prods.*, 38 Cal. 4th 264, 283 (2006). "'To succeed on a claim of disability-based harassment [under the ADA], the plaintiff must prove: (1) that she belongs to a protected group; (2) that she was subjected to unwelcome harassment; (3) that the harassment complained of was based on her disability or disabilities; (4) that the harassment complained of affected a term, condition, or privilege of employment; and (5) that the employer knew or should have known of the harassment and failed to take prompt, remedial action.'" *Rodriguez v. John Muir Med. Ctr.*, 2010 WL 1002641, at *3 (N.D. Cal. Mar. 18, 2010) (quoting *Flowers v. S. Reg'l Physician Servs., Inc.*, 247 F.3d 229, 232 (5th Cir. 2001)).

"[A] difficult work environment, standing alone, does not give rise to a cause of action under Title VII, FEHA, or the ADA." *Abdul-Haqq v. Kaiser Emergency in San Leandro*, 2017 WL 550235, at *6 (N.D. Cal. Feb. 10, 2017). The alleged harassment must be made based on some protected trait, such as race, sex, or disability. *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80 (1998) ("Title VII does not prohibit all verbal or physical harassment in the workplace; it is directed only at discrimination [because of a protected trait.]"); accord Cal. Gov't Code § 12940(j)(1) (FEHA); 42 U.S.C. § 12112(a) (ADA).

As discussed above, Defendants do not appear to dispute that Plaintiff belongs to a protected class, and the Court already found that Defendants' conduct was motivated by Plaintiff's

belonging to that protected class. Here, the Court finds Plaintiff has stated enough facts to state plausible harassment claims based on severe or pervasive harassment, both against the County and the individual defendants. As discussed above, he alleges Defendants refused to process his paperwork (Compl. ¶ 19), refused to pay him overtime (*id.* ¶ 20), denied a salary rate increase (*id.* ¶¶ 14, 21), threatened him with retaliation if he complained about his salary rate (*id.* ¶ 22), accused Plaintiff of posing a threat of workplace violence based on the terrorist shooting in San Bernardino (*id.* ¶ 34), falsely accused him of attacking the integrity of co-workers (*id.* ¶ 55), denied him a six month pay increase and 5% pay differential (*id.* ¶¶ 47-51), and pressured him to resign (*id.* ¶¶ 62-64). Considered collectively, the Court finds these allegations are sufficient at the pleadings stage. Accordingly, the Court DENIES Defendants' motion as to Plaintiff's harassment claims.

## C. Plaintiff's Retaliation Claims

Plaintiff also brings claims against the County for retaliation under Title VII (third cause of action), the ADA (sixth cause of action), and FEHA (ninth cause of action). Compl. ¶¶ 105-10, 133-43, 159-65. The requirements to state a claim for retaliation are the same under Title VII, the ADA, and FEHA. A prima facie case of retaliation requires a plaintiff to show that: (1) he undertook a protected activity; (2) his employer subjected him to an adverse employment action; and (3) there is a causal link between the protected activity and the adverse action. *Vasquez v. Cty. of Los Angeles*, 349 F.3d 634, 646 (9th Cir. 2003) (Title VII); *Yanowitz v. L'Oreal USA, Inc.*, 36 Cal. 4th 1028, 1042 (2005) (FEHA); *T.B. ex rel. Brenneise v. San Diego Unified Sch. Dist.*, 806 F.3d 451, 473 (9th Cir. 2015) (adopting Title VII's framework for ADA retaliation claims).

Defendants move to dismiss these claims on three grounds: (1) Plaintiff cannot base his Title VII and FEHA retaliation claims on his complaints about pay; (2) Plaintiff cannot base his retaliation claims on his EEOC and DFEH charges because he does not allege any knowledge of such charges on the part of the relevant decisionmakers; and (3) Plaintiff's factual allegations fail to establish an adverse employment action taken after he submitted a doctor's request for reasonable accommodations. Mot. at 14.

### 1. Retaliation claims based on Plaintiff's complaints about pay

Defendants first argue that Plaintiff does not allege that his complaints about pay included

12

any reference to religion, race or national origin, and his complaints therefore do not constitute protected activities and cannot support a claim of retaliation under Title VII or FEHA. *Id* at 14-15. The Court disagrees. Plaintiff alleges that when he complained about not being paid at the proper rate for his work, Defendant Moawad told him it seemed to be because of him being a "threat of workplace violence" and that he was perceived as "a potential terrorist." Compl. ¶¶ 33-34. After this incident, Defendants retaliated against him by denying him a step increase. *Id.* ¶¶ 47-48. Plaintiff further alleges that each time he complained about his pay, "Defendants expressed serious concerns about his potential for workplace violence, profiling him as though all Muslims are terrorists." *Id.* ¶¶ 49-50. Construing these allegations as true and construing them in the light most favorable to Plaintiff, the Court finds his allegations raise a right to relief above the speculative level. *Twombly*, 550 U.S. at 555 (internal citations and parentheticals omitted). Accordingly, Defendants' motion is DENIED as to Plaintiff's retaliation claims based on pay.

### 2. Retaliation claims based on his EEOC charges

Defendants next argue that, although his EEOC complaints are protected activities, Plaintiff's retaliation claims must fail because he does not allege any knowledge of such charges on the part of the relevant decisionmakers, i.e. the County or the individual defendants. Mot. at 15. The Court agrees. Plaintiff's only allegation related to his EEOC complaint is that "[o]n July 28, 2016, Plaintiff filed a charge of harassment, discrimination and retaliation with the Equal Employment Opportunity Commission." Compl. ¶ 72. He does not allege that the County or any of the individual defendants knew about this complaint. Without such allegations, the retaliation claim has not been plausibly alleged. *Cooper v. Cate*, 2011 WL 5554321, at *11 (E.D. Cal. Nov. 15, 2011) (dismissing retaliation claim with leave to amend where the plaintiff failed to allege that defendants had knowledge of any protected conduct by Cooper); *Adams v. Kmart Corp.*, 2001 WL 969049, at *4 (N.D. Cal. Aug. 10, 2001) (noting that "both the Ninth Circuit and California courts have held that the decisionmaker's knowledge of the protected activity is an essential element.") (citing *Cohen v. Fred Meyer, Inc.*, 686 F.2d 793, 796 (9th Cir. 1982); *Morgan v. Regents of University of California*, 88 Cal. App. 4th 52, 69-70 (2000)). Dismissal of this claim is therefore appropriate, and the Court GRANTS Defendants' motion as to Plaintiff's retaliation claim based

13

on his EEOC charges WITH LEAVE TO AMEND.

### 3. Retaliation claim under the ADA

Finally, Defendants argue Plaintiff's request for accommodations for his disability cannot serve as a basis for his retaliation claim because he alleges no adverse employment action occurring after his August 4, 2016 submission of the letter from Dr. Kan. Mot. at 15. An adverse action is one that is "reasonably likely to deter [individuals] from engaging in protected activity." *Pardi v. Kaiser Found. Hosps.*, 389 F.3d 840, 850 (9th Cir. 2004). Here, Plaintiff alleges "Defendants began to use his need for these accommodations to harass and retaliate against him." Compl. ¶ 77. Specifically, he alleges Defendants questioned his attendance and initiating an investigation into his work (*id.* ¶¶ 78-79), issued a counseling memo and letter of reprimand (*id.* ¶¶ 80, 85), pressured him to resign (*id.* ¶ 62), and required him to vacate the premises accompanied by security on the day he submitted a Notice of Separation, even though the notice was for a date in the future (*id.* ¶¶ 90-91). Considered collectively, the Court finds these allegations are sufficient at the pleadings stage. Accordingly, Plaintiff has alleged a plausible claim for retaliation under the ADA and the Court therefore DENIES Defendants' motion as to Plaintiff's ADA retaliation claim.

### D. **Failure to Accommodate**

Plaintiff's fourth cause of action is for Failure to Accommodate under the ADA. Compl. ¶¶ 112-20. Plaintiff was diagnosed with ADHD, which affects his ability to sleep, think, concentrate, and focus. *Id.* ¶ 76. He requested four accommodations for his disability: (1) a later start time, generally 10:00 a.m.; (2) flexibility to work at home as needed; (3) 24 hours' notice prior to meeting with supervisors and colleagues; and (4) a private office with a lock on the door. *Id.* Plaintiff alleges Defendants would have incurred no undue hardship by providing these accommodations, but they instead retaliated against him for the request. *Id.* ¶¶ 116-17. Under the ADA, a plaintiff can make out a prima facie case of failure to accommodate by showing: (1) he is disabled within the meaning of the ADA; (2) he is a qualified individual able to perform the essential functions of the job with reasonable accommodation; and (3) he suffered an adverse employment action because of the disability. *Samper v. Providence St. Vincent Med. Ctr.*, 675

F.3d 1233, 1237 (9th Cir. 2012) (citation omitted).

Defendants do not address whether Plaintiff is disabled within the meaning of the ADA. Instead, they move to dismiss this claim on three grounds: (1) Plaintiff fails to allege facts establishing that his requested accommodations were reasonable in light of his alleged disability and his work; (2) Plaintiff fails to allege facts sufficient to establish that Defendants denied a reasonable request; and (3) Plaintiff fails to allege that he suffered an adverse employment action as a result. Mot. at 16.

"[F]ailure to provide reasonable accommodation can constitute discrimination." *Vinson v. Thomas*, 288 F.3d 1145, 1154 (9th Cir. 2002). A "reasonable accommodation" is defined as "modifications or adjustments to the work environment, or to the manner or circumstances under which the position held or desired is customarily performed, that enable a qualified individual with a disability to perform the essential functions of that position." 29 C.F.R. § 1630.2(o)(1)(ii). At the pleading stage, a plaintiff must, at a minimum, "describe the requested accommodation and allege when and to whom it was made." *Abdul-Haqq v. Kaiser Found. Hosps.*, 2015 WL 335863, at *3 (N.D. Cal. Jan. 23, 2015); *Estell v. McHugh*, 2016 WL 4140819, at *6 (N.D. Cal. Aug. 4, 2016); *Anaya v. Marin Cty. Sheriff*, 2014 WL 6660415, at *11 (N.D. Cal. Nov. 24, 2014).

Here, Plaintiff alleges he submitted the letter from Dr. Kan to Defendants in August 2016, and that it contained four accommodation requests. Compl. ¶ 74. Thus, Plaintiff meets the minimal requirement of describing the requested accommodation and when and to whom it was made. Although Defendants argue Plaintiff fails to establish these requests were reasonable, the Court finds that such a question of fact is not appropriate for determination on a motion to dismiss. *See McGary v. City of Portland*, 386 F.3d 1259, 1270 (9th Cir. 2004) ("[W]e have also recognized that the question of what constitutes a reasonable accommodation under the ADA 'requires a fact-specific, individualized analysis of the disabled individual's circumstances and the accommodations that might allow him to meet the program's standards.'") (quoting *Wong v. Regents of Univ. of Cal.*, 192 F.3d 807, 818 (9th Cir. 1999)). Finally, Plaintiff alleges Defendants denied his request for accommodations and "began to use his need for these accommodations to harass and retaliate against him." Compl. ¶¶ 77, 116. The Court finds these allegations meet the

1 minimum pleading requirements. Accordingly, Defendants' motion is DENIED as to Plaintiff's
2 ADA failure to accommodate claim.

### E. Failure to Prevent

Plaintiff's eleventh cause of action is for Failure to Prevent Harassment and Discrimination under FEHA. *Id.* ¶¶ 177-80. Defendants' sole argument as to this claim is that "Plaintiff has failed to allege a viable discrimination claim or a viable harassment claim" and "[i]n the absence of such a claim, Plaintiff cannot assert a FEHA failure to prevent discrimination or harassment claim." Mot. at 17. However, as discussed above, Plaintiff has alleged viable discrimination and harassment claims. Accordingly, the Court DENIES Defendants' motion as to Plaintiff's eleventh cause of action.

### F. Overtime

Plaintiff's twelfth cause of action is for Failure to Pay Overtime under the FLSA. He alleges that, between January 2015 and October 2015, he was paid an hourly wage for 40 hours per week, although he actually worked between 50-70 hours per week. Compl. ¶ 183. Defendants argue that Plaintiff's claim is time-barred because it is predicated upon events occurring in 2015. Mot. at 17-18. Plaintiff does not appear to dispute that his FLSA overtime claim is barred by the two year statute of limitations, but argues that his factual allegations support a willful violation by Defendants, which extends the statute of limitations to three years. *See* Opp'n at 11

Pursuant to the FLSA, "no employer shall employ any of his employees . . . for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of [forty hours] at a rate not less than one and one-half times the regular rate at which he is employed." 29 U.S.C. § 207(a)(1). Any action for overtime must be commenced within two years after the cause of action accrued, "except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued." 29 U.S.C. § 255(a). To obtain the benefit of the three-year exception, Plaintiff must show "that the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute." *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133, 135 (1988). Plaintiff alleges "Defendants were clearly informed and understood that Plaintiff worked

16

in excess of forty (40) hours per week" because he informed his supervisor that it was "impossible" for him to do his job with 40 hours per week, yet Defendants failed to pay him for the hours he actually worked. Compl. ¶¶ 20, 184. At this early stage in the pleadings and taking Plaintiff's allegations as true, it is plausible that Defendants acted with reckless disregard of Plaintiff's right to overtime compensation. *See* 29 C.F.R. § 578.3(c)(3) ("[A]n employer's conduct shall be deemed to be in reckless disregard of the requirements of the Act, among other situations, if the employer should have inquired further into whether its conduct was in compliance with the Act, and failed to make adequate further inquiry."). Accordingly, because Plaintiff's allegations support a willful violation by Defendants, his claim is deemed timely at the pleading stage. The Court therefore DENIES Defendants' motion as to his twelfth cause of action for failure to pay overtime under the FLSA.

## CONCLUSION

Based on the analysis above, the Court hereby **GRANTS IN PART** and **DENIES IN PART** Defendants' Motion to Dismiss. Defendants' motion is **GRANTED** as to Plaintiff's third cause of action for retaliation under Title VII related to his EEOC charges. Defendants' motion is **DENIED** as to all other causes of action. If he chooses to do so, Plaintiff may file an amended complaint within 14 days. Defendants shall respond within 14 days from service of the amended pleading.

In addition, the Court shall conduct a Case Management Conference on August 9, 2018 at 10:00 a.m. in Courtroom B, 15th Floor, 450 Golden Gate Avenue, San Francisco, CA 94102. This conference shall be attended by lead trial counsel. No later than seven calendar days before the Case Management Conference, the parties shall file a Joint Case Management Statement containing the information in the Standing Order for All Judges in the Northern District of California, available at: http://cand.uscourts.gov/mejorders. The Joint Case Management Statement form may be obtained at: http://cand.uscourts.gov/civilforms. If the statement is e-filed, no chambers copy is required.

**IT IS SO ORDERED.**

Dated: June 27, 2018

_____
MARIA-ELENA JAMES
United States Magistrate Judge

17